UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES REED, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00638-SRC |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**Memorandum and Order**

James Reed asks the Court to set aside, vacate, or correct his sentence under 28 U.S.C.

§ 2255.  He challenges the Court's decision to revoke his supervised-release term, arguing

(1) that the Court lacked jurisdiction to do so; (2) that he was denied due process; (3) that he was

subjected to double jeopardy; and (4) that supervised release is unconstitutional.  Having

carefully reviewed the record, the Court holds that Reed has not shown entitlement to relief or an

evidentiary hearing under 28 U.S.C. § 2255.

I.    **Background**

A.    **Factual background**

On May 7, 2021, Reed pleaded guilty to (1) misuse of a Social Security number and

(2) aggravated identity theft.  Guilty Plea Agreement at 1, *United States v. Reed*, No. 4:20-cr-

00732-SRC-4 (E.D. Mo. May 7, 2021), doc. 89 ("Crim. doc.").  Reed's guilty-plea agreement

describes the following facts:

> On or about September 29, 2020, Defendant Reed, presenting himself as
> victim B.C., went to All Star Dodge in Bridgeton, Missouri, in order to purchase a
> vehicle.  Using victim B.C.'s name and Social Security Number, as well as a fake
> Missouri Driver's License with this information and Reed's picture, Reed applied
> for a vehicle loan financed by Together Credit Union.  The loan was approved, and
> Reed took possession of a 2017 Dodge Ram from the dealership, for a price of

$35,223.00.  The following day, Defendant Reed returned to All Star Dodge in Bridgeton, Missouri, reportedly to purchase another vehicle.  A witness working for All Star Dodge contacted victim B.C.'s employer, who advised that the victim was a white male residing in Florida, a description which did not comport with Defendant Reed's appearance.  Acting on this information, the witness informed Defendant Reed that the loan approval process was taking longer than expected.  At that point, Defendant Reed left the dealership and did not return.  The witness then contacted the local police department, and the previously purchased 2017 Dodge Ram was reported as stolen.

Investigators later observed the 2017 Dodge Ram, bearing the same temporary license plate from All Star Dodge, at a known address of co-Defendant Damon Campbell.  At that time, it was discovered that the cellular telephone number used in the original September 29, 2020 transaction at All Star Dodge was linked to Defendant James Reed from a previous arrest.  In addition, prior booking photographs of Defendant James Reed appeared to show the same individual depicted in the fake Missouri Driver's License that was used at All Star Dodge, containing victim B.C.'s name and personally identifying information.

The defendant admits herein that he willfully and knowingly represented to someone that a Social Security number had been assigned to him, when the Social Security number had not been assigned to him, and the defendant did so with the intent to deceive and for the purpose of obtaining anything of value, specifically, on September 29, 2020, at All Star Dodge and with an application through Together Credit Union, using the Social Security Number of B.C. ending in -5335, in order to obtain a vehicle.

The defendant further admits herein that he knowingly used the name, address, and Social Security Number of victim B.C., without legal authority, knowing that the Social Security number belonged to another person, during and in relation to the felony offenses of misuse of a Social Security Number and bank fraud.

Crim. doc. 89 at 3–4 (The Court cites to page numbers as assigned by CM/ECF.).

**B.      Procedural background**

**1.      Criminal proceedings**

In November 2020, a federal grand jury indicted Reed and three other defendants.  Crim.

doc. 1.  The grand jury charged Reed with three counts:  misuse of a Social Security number in

violation of 42 U.S.C. § 408(a)(7)(B) (Count 19); bank fraud in violation of 18 U.S.C. § 1344

(Count 20); and aggravated identity theft in violation of 18 U.S.C. § 1028A (Count 21).  *Id.* at 8–

2

9.  Six months later, in exchange for the United States' promise to move for dismissal of Count 20, Reed pleaded guilty to Counts 19 and 21.  Crim. doc. 89 at 1.  Reed admitted to knowingly violating 42 U.S.C. § 408(a)(7)(B), admitted that a factual basis for the plea existed, and confirmed that he fully understood the elements of his crime—namely:

1.  That he "knowingly represented a number to be the Social Security account number assigned by the Commissioner of Social Security to [him];"

2.  That, "at the time the Social Security account number was used, it had not been assigned by the Commissioner of Social Security to [him];"

3.  That, "when [he] made his false representation, he intended to deceive All Star Dodge/Together Credit Union;" and

4.  That, "when [he] made the false representation, he did so for the purpose of obtaining anything of value from another person."

*Id.* at 2.

Reed also admitted to knowingly violating 18 U.S.C. § 1028A, admitted that a factual basis for the plea existed, and confirmed that he fully understood the elements of the crime—namely:

1.  That "[he] knowingly used a Social Security Number;"

2.  That "[he] knew that the Social Security Number [he] used belonged to another person;"

3.  That "[he] used the Social Security Number without lawful authority;"

4.  That "[he] knew that he used the Social Security Number without lawful authority;" and

5.  That "[he] used the Social Security Number during and in relation to the crime of bank fraud."

*Id.* at 2–3.

Reed also agreed to waive many of his rights.  For instance, he "waive[d] all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues

3

relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s)." *Id.* at 7. He further waived his right to appeal all sentencing issues, except those related to Criminal History, "but only if it affects the Base Offense Level or Criminal History Category." *Id.* Reed also "waive[d] all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to . . . [s]ection 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." *Id.* at 7–8.

The United States Probation Officer prepared a Presentence Investigation Report (PSR). Crim. doc. 114. The PSR calculated Reed's total offense level as 10 and his total criminal history category as II. *Id.* at ¶¶ 40, 54. Based upon that total offense level and criminal history category, the imprisonment range that the advisory guidelines provided was eight to fourteen months for Count 19. *Id.* at ¶ 94. And Count 21 carried with it a mandatory two-year term of imprisonment, to be imposed consecutively to the other count. *Id.* at ¶¶ 93, 94. The guidelines also provided for a one-year term of supervised release for Count 21 and a one- to three-year term of supervised release for Count 19. *Id.* at ¶ 99.

In May 2021, the Court held a plea hearing at which Reed pleaded guilty to both counts. Crim. doc. 88. Three months later, in August 2021, the Court sentenced Reed to a total of 32 months' imprisonment—eight months on Count 19 and 24 months on Count 21. Crim. doc. 125 at 2. The Court also sentenced Reed to a three-year term of supervised release—three years on Count 19 and one year on Count 21, to run concurrently. *Id.* at 3.

Reed began his supervised-release term in March 2023. Crim. doc. 278 at 2. Then, in October 2024, the Probation Office filed a petition for revocation of supervised release. *Id.* at 1.

The petition alleged that Reed violated the terms of his supervised release by, among other things, failing to make restitution payments. *Id.* at 2–3.

The Court held a hearing in December 2024 regarding the restitution violations. Crim. docs. 295, 309. At the hearing, Reed confessed to the restitution violations. Crim. doc. 309, Rev. Hr'g Tr. at 7:11–7:20. The parties jointly recommended a prison sentence of twelve months and one day. *Id.* at 3:1–3:16. Both Reed and his attorney, Brocca Morrison, stated that this sentence would afford Reed time to address his mental health issues:

**MS. MORRISON:** Mr. Reed, as he mentioned, is on some psychiatric medication. He's had some mental health issues that have arisen in the last few months prior to his arrest in Kalamazoo, Michigan and prior to coming here. And what we were talking about right before court that took a few moments was an update on whether he was getting the medication he needed because I have been working on that with him at the jail.

We feel that a sentence of one year and one day will give him time within the Bureau of Prisons to address some of those mental health issues, perhaps stabilize, get on the medication that he needs, so that when he is released, if the Court puts him back on supervision, which we anticipate the Court will, he will have the best start possible.

*Id.* at 8:13–9:1.

**[REED]:** Your Honor, I just—I understand everything that's going on at this point. I need—I need—I am—what I do want you to consider is I need help. Incarcerating, however the law may fall, I know I have got to do time, but I'm asking that you take into consideration that I'm needing mental help. I was seeking that prior to being incarcerated. So, again, if you can place me somewhere where I can get the adequate help that I need mentally because that's my problem.

*Id.* at 10:2–10:10.

The Court revoked Reed's term of supervised release on Count 19[1] and adopted the parties' recommendation, sentencing Reed to a prison term of twelve months and one day. *Id.* at 12:3–12:9.  The Court also sentenced Reed to a 23-month term of supervised release. *Id.* at 12:10–12:11.  Reed completed this new term of imprisonment on July 11, 2025, and he is currently serving his 23-month term of supervised release. *See Find an Inmate*, Fed. Bureau of Prisons, www.bop.gov/inmateloc/ (select "Find By Number"; then enter "20509-509" into the "Number" field; and then click "Search") (last visited June 30, 2026).

### 1.      Civil proceedings

In May 2025, Reed filed a motion to vacate under section 2255. *Reed v. United States*, No. 4:25-cv-00638-SRC (E.D. Mo. May 5, 2025), doc. 1 ("Civ. doc.").  The Court assumes, without deciding, that Reed may challenge his revocation sentence via a section 2255 motion. *See Jackson v. Fisher*, Civ. No. 11-2670 (JNE/JSM), 2011 WL 5593659, at *2 (D. Minn. Oct. 6, 2011), *report and recommendation adopted sub nom.*, *Jackson-Bey v. Fisher*, Civ. No. 11-2670, 2011 WL 5598352 (D. Minn. Nov. 17, 2011), *aff'd*, No. 12-1212, 2012 WL 13228481 (8th Cir. Mar. 23, 2012); *see also Loudner v. Wilson*, No. 14-CV-4926 (PAM/SER), 2015 WL 164185, at *2 (D. Minn. Jan. 13, 2015); *McKinney v. United States*, 756 F. Supp. 3d 716, 720 (S.D. Iowa 2024).

Reed makes several arguments in his motion:  (1) that the Court lacked jurisdiction over his supervised-release violation; (2) that his inability to pay restitution was not a proper basis for revoking his supervised release; (3) that the supervised-release revocation subjects him to double jeopardy; and (4) that supervised release cannot be defended "as" or "like" parole or probation.

---

[1] The term of supervised release for Count 21 was one year. *See* crim. doc. 309, Rev. Hr'g Tr. at 3:22–4:2.  Thus, the Court revoked Reed's term of supervised release only for Count 19.

Civ. doc. 1 at 4–8.  The United States filed its response, civ. doc. 10, and Reed failed to timely file a reply, *see* civ. doc. 2, rendering his motion ripe for this Court's review.

## II.  Standard

### A.  Section 2255

Under section 2255, a federal prisoner "may move the court which imposed [his] sentence to vacate, set aside or correct the sentence" on the grounds that the court imposed "the sentence . . . in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  If a petitioner claims his sentence violates the Constitution or laws of the United States, the petitioner must establish that the violation constitutes "a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (first quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989); and then citing Fed. R. Crim. P. 32(d) advisory committee notes to the 1983 amendments).  Generally, to obtain section 2255 relief based on a claim, a petitioner must have raised the underlying error on direct appeal.  *See Roundtree v. United States*, 885 F.3d 1095, 1097 (8th Cir. 2018).  If a petitioner failed to do so, the Court considers the claim procedurally defaulted, rendering it ineffective in establishing a right to section 2255 relief.  *See id.*

Three exceptions to this general rule exist.  First, "if the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis." *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002).  Second, if a petitioner raises a constitutional claim, the Court does not consider the claim procedurally defaulted if the petitioner shows cause for the default and actual prejudice.  *See Anderson v. United States*, 25

F.3d 704, 706 (8th Cir. 1994); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992).  This "cause and prejudice exception does not apply to nonconstitutional or nonjurisdictional claims that could have been but were not raised on direct appeal."  *Anderson*, 25 F.3d at 706 (first citing *Brennan v. United States*, 867 F.2d 111, 120 (2d Cir. 1989); and then citing *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988)).  Finally, the Court "will consider a claimed error that could have been raised at trial or on direct appeal if the alleged error was a fundamental miscarriage of justice."  *Id.* (citing *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam)).  This exception, however, "applies only when a petitioner shows by clear and convincing evidence that, but for an alleged constitutional error, no reasonable juror would have found the petitioner guilty," *id.* at 706–07 (citing *Wallace v. Lockhart*, 12 F.3d 823, 827 (8th Cir. 1994)), and extends only to claims of factual innocence, *id.* at 707 (first citing *Narcisse v. Dahm*, 9 F.3d 38, 40 (8th Cir. 1993); and then citing *Ramey*, 8 F.3d at 1314).

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994).  A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief."  *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)).  However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based."  *Shaw*, 24 F.3d at 1043 (citing *Larson v. United States*, 905 F.2d 218, 220–21 (8th Cir. 1990)).

8

## B.      Ineffective assistance of counsel

A petitioner may raise an ineffective-assistance-of-counsel claim for the first time in a section 2255 motion, even if he could have raised the same claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). The petitioner may assert ineffective assistance as a standalone claim, which constitutes an exception to the procedural-default rule and exists to prevent petitioners from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* The petitioner may also assert ineffective assistance as a gateway to establish cause to overcome a procedural default on a separate claim. *See Ruff v. Armontrout*, 77 F.3d 265, 267 (8th Cir. 1996).

To establish ineffective assistance of counsel, a petitioner "faces a heavy burden." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). He must show both that his counsel's performance was deficient and that the deficient performance prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001). Counsel's performance is deficient only if it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88; *see also Sera*, 267 F.3d at 874. Two substantial impediments exist to making such a showing. First, "a 'strong presumption'" exists "that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689). Second, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (quoting *Strickland*, 466 U.S. at 690).

9

## III.    Discussion

The Court notes at the outset that Reed did not raise on appeal any of the issues in his petition. *See* civ. doc. 1 at 4–9.  Thus, the Court addresses each of Reed's claims in light of this apparent procedural default. *See Roundtree*, 885 F.3d at 1097.

### A.    Jurisdictional argument

Reed first asserts that, before he violated the terms of his supervised release, his case "had been transferred to the Southern District of Indiana" and "was in the process of being transferred to the Western District of Michigan."  Civ. doc. 1 at 17; *see also id.* at 4.  As a result, he argues, this Court lacked jurisdiction to revoke his original supervised-release term. *Id.* at 4, 17.  Because Reed claims jurisdictional error, the Court need not subject this claim to a procedural-default analysis. *See Mooring*, 287 F.3d at 727.  The Court therefore addresses his argument on its merits.

Reed is correct that, under 18 U.S.C. § 3605, "[a] court, after imposing a sentence, may transfer jurisdiction over a . . .  person on supervised release to the district court for any other district to which the person . . . is permitted to proceed, with the concurrence of such court."  He is also correct that a transfer under section 3605 allows the transferee court "to take full jurisdiction from the transferor court," thereby divesting the transferor court of jurisdiction. *United States v. El Herman*, 971 F.3d 784, 785–86 (8th Cir. 2020) (citations omitted).

Reed is incorrect, however, that a jurisdictional transfer under section 3605 occurred here.  True, the Southern District of Indiana supervised Reed's case after his original term of supervised release began. *See* doc. 278 at 2.  But crucially, the Eastern District of Missouri did not formally transfer jurisdiction to the Southern District of Indiana—there was merely an informal transfer of supervision.

10

A transfer of supervision is one type of informal arrangement authorized by 18 U.S.C. § 3603(4).  Under this arrangement, "staff in the probation office with jurisdiction transfer the supervision of the case to another probation office, which assumes responsibility for enforcing all conditions and implementing all supervision strategies."  8E *Guide to Judiciary Policy* § 610(a) (2018).  This is different from a formal transfer of jurisdiction, which authorizes the transferee court "to exercise all powers over the person under supervision that are permitted by the statute."  *Id.* at § 630; *see also United States v. Johnson*, 861 F.3d 474, 479 n.18 (3d Cir. 2017) (distinguishing between formal transfers of jurisdiction and informal supervision arrangements); *Roberts v. United States*, No. 4:23-cv-00914-MTS, 2023 WL 5917390, at *1 (E.D. Mo. Aug. 15, 2023) (same); *cf.* Fed. R. Crim. P. 32.1(a)(4)–(5) (noting that district with jurisdiction, unlike district without jurisdiction, may conduct a supervised-release-revocation hearing).  Because no formal transfer of jurisdiction occurred, this Court retained jurisdiction over Reed's supervised-release violation.  Thus, Reed's first argument fails.

## B.    Procedurally defaulted arguments

Reed's remaining arguments challenge the constitutionality of his supervised-release revocation, and of supervised release generally.  *See* civ. doc. 1 at 5–9, 19–28.  Reed did not object on these grounds at his revocation hearing.  *See generally* crim. doc. 309.  Nor did he raise these arguments on appeal.  *See* civ. doc. 1 at 4–9.  Reed's arguments are therefore procedurally defaulted.  *See Roundtree*, 885 F.3d at 1097.  To excuse this default, Reed must show either cause and prejudice or actual innocence.  *See Anderson*, 25 F.3d at 706; *Reid*, 976 F.2d at 448.

### 1.    Actual innocence

Reed does not argue in his petition that he is innocent of the supervised-release violation.  *See generally* civ. doc. 1.  Indeed, he admitted to the violation under oath at his revocation

hearing. *See* crim. doc. 309, Rev. Hr'g Tr. at 7:11–7:20. Thus, the "fundamental miscarriage of justice" exception does not apply to excuse Reed's procedural default. *See Anderson*, 25 F.3d at 706–07 (noting that the fundamental-miscarriage-of-justice exception applies only to claims of factual innocence). The Court therefore turns to analyzing whether Reed satisfies the cause-and-prejudice exception.

### 2. Cause and prejudice

#### a. Cause

To show cause for a procedural default, a petitioner must show that "some objective factor external to the defense prevented him from presenting or developing the factual or legal basis of his claim." *Ruff*, 77 F.3d at 267 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Ineffective assistance of counsel may constitute cause to excuse a procedural default. *Id.* (citation omitted). To prevail on a gateway ineffective-assistance-of-counsel claim, the petitioner must show both that his counsel's performance was deficient and that this deficiency prejudiced his case. *Strickland*, 466 U.S. at 687; *Ruff*, 77 F.3d at 268. Here, Reed argues that his counsel, Brocca Morrison, was inadequate in several ways. *See* civ. doc. 1 at 5–6, 8–9, 14, 16, 19–20, 22. The Court addresses each argument in turn.

##### i. Failure to object

First, Reed asserts that his counsel was ineffective because she failed to object to the supervised-release revocation based on the Supreme Court's decision in *Bearden v. Georgia*, 461 U.S. 660 (1983). *See* civ. doc. 1 at 19. In *Bearden*, he argues, "the Supreme Court held that mere inability to pay fines or restitution could not serve as a proper basis for revocation," absent a finding that the releasee was actively avoiding payment or failed to pay due to negligence or

12

irresponsibility. *Id.* He then states that his counsel "failed to require this burden be met" at the hearing, which led to both "improper revocation and the imposition of a new term." *Id.*

Reed is correct that *Bearden* requires courts to inquire into a releasee's reasons for failure to pay restitution before revoking a term of supervised release. *Bearden*, 461 U.S. at 672–73; *see also* 18 U.S.C. § 3614 (codifying *Bearden*'s holding); *United States v. Montgomery*, 532 F.3d 811, 813 (8th Cir. 2008) (noting that the *Bearden* holding applies to revocation of supervised release). And if the releasee could not pay "despite sufficient bona fide efforts to acquire the resources to do so," the court must consider "alternate measures of punishment other than imprisonment." *Bearden*, 461 U.S. at 672. But if the court finds that the releasee "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay," the court may revoke the releasee's supervised-release term without considering alternate measures of punishment. *Id.*; *see also Montgomery*, 532 F.3d at 814.

With this in mind, Reed's ineffective-assistance argument fails. Under Reed's original terms of restitution, the Court instructed him to "notify the Court and this district's United States Attorney's Office . . . of any material changes in [his] economic circumstances that might affect [his] ability to pay criminal monetary penalties." Crim. doc. 125 at 6; *see also* 18 U.S.C. § 3664(e) (noting that, in a restitution proceeding, "[t]he burden of demonstrating the financial resources of the defendant . . . shall be on the defendant"). Reed did not do so. Reed also had the opportunity to argue at his revocation hearing that his failure to pay restitution was due to indigency or other factors out of his control, but he did not. *See generally* crim. doc. 309. Nonetheless, the Court still received new information about Reed's financial circumstances in the Probation Officer's petition for revocation of supervised release. *See* doc. 278 at 3 (noting that "Reed insisted that he fell behind on his restitution payments as he was going through a

13

divorce with his wife and was having monetary problems"). And the Court considered this information, as well as all other information related to the supervised-release violation and underlying case, before deciding to revoke Reed's original supervised-release term. *See* crim. doc. 309, Rev. Hr'g Tr. at 3:1–3:5, 12:3–12:9.

Based on the record, Reed's willingness to admit to the violation, and Reed's failure to assert that his violation was due to indigency, this was not a case where the releasee "could not pay despite sufficient bona fide efforts to acquire the resources to do so." *Bearden*, 461 U.S. at 672. The Court therefore did not have to consider "alternative measures of punishment" before revoking Reed's term of supervised release. *Id.*; *Montgomery*, 532 F.3d at 814. Thus, the Court finds that Reed's counsel did not fall below "an objective standard of reasonableness" in failing to object. *Strickland*, 466 U.S. at 687–88. Reed fails to show cause for his procedural default on this ground.

### ii. Failure to object to new supervised-release term

Reed next argues that his counsel was ineffective because she "made no effort to dissuade the Court from imposing further [supervised] release after completion of the current term." Civ. doc. 1 at 20. But this argument also fails. At the revocation hearing, Reed and his counsel agreed that a post-revocation prison sentence of twelve months and one day would "give [Reed] time within the Bureau of Prisons to address some of [his] mental health issues." Crim. doc. 309, Rev. Hr'g Tr. at 8:21–8:23; *see also id.* at 10:2–10:10 (Reed asking the Court to "place [him] somewhere where [he] can get the adequate help that [he needs] mentally"). And these mental health resources that Reed sought were also included as part of his new supervised-release term. *See* crim. doc. 296 at 5 (requiring Reed to participate in a mental health treatment program, supervised by a probation officer, as a special condition of supervised

14

release).  So, the new supervised-release term furthers the interest articulated by both Reed and his counsel at the revocation hearing.

The Court is therefore not persuaded that counsel's failure to object to the Court's imposing a new term of supervised release, *see* crim. doc. 309, Rev. Hr'g Tr. at 8:21–9:1, was a deficiency of representation.  Instead, the Court finds that counsel's decision was likely a "[s]trategic choice[] made after thorough investigation of . . . facts relevant to plausible options." *Rice*, 449 F.3d at 897 (citation omitted).  And even if counsel did fall below an objective standard of reasonableness in failing to object, the Court finds that this failure did not prejudice Reed, who implored the Court for mental-health resources.  *See* crim. doc. 309, Rev. Hr'g Tr. at 10:2–11:2.  Reed fails to show cause for his procedural default on this ground as well.

### iii.    Failure to appeal

Finally, Reed argues that his counsel was "inadequate" because she did not raise any of his arguments in an appeal from the revocation hearing.  *See* civ. doc. 1 at 9.  He states that, although he "asked about appeal, no appeal was filed." *Id.* at 16.  The Eighth Circuit has found that counsel's "failure to file an appeal after a client's explicit request constitutes deficient performance, and no further showing of prejudice or likely success on appeal is required." *Burnett v. United States*, 125 F.4th 912, 914 (8th Cir. 2025) (citation omitted); *see also United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014) ("An attorney's failure to file a notice of appeal upon the client's request constitutes ineffective assistance of counsel, and no specific showing of prejudice is required.").  But here, Reed does not allege that he requested that his counsel file an appeal; he states merely that he "asked" about an appeal.  Civ. doc. 1 at 16.  Therefore, the Court need not presume prejudice.

15

The Court instead treats this as a situation where Reed "neither instruct[ed] counsel to file an appeal nor ask[ed] that an appeal not be taken." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). In such a scenario, the Court must ask "whether counsel in fact consulted with [Reed] about an appeal." *Id.* If counsel did consult with Reed, counsel would be ineffective "only by failing to follow [Reed's] express instructions with respect to an appeal." *Id.* But if counsel did not consult with Reed, the Court must ask whether counsel's failure to do so constituted deficient performance. *Id.* Here, Reed does not indicate whether counsel discussed the possibility of an appeal with him. *See* civ. doc. 1 at 16. But even assuming that counsel did not do so—and was therefore deficient—the Court finds that Reed does not show prejudice.

### b.    Prejudice

To establish actual prejudice, a petitioner must show that the complained-of error "worked to his actual and substantial disadvantage." *Reid*, 976 F.2d at 448. In the failure-to-appeal context, a petitioner must show that "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. The Court finds that Reed does not establish prejudice from counsel's failure to appeal. Reed's allegations do not show that he "promptly expressed a desire to appeal." *Id.* at 485. And his grounds for appeal lack merit. *See id.*

First, Reed's argument that the Court failed to determine whether he willfully failed to pay restitution, *see* civ. doc. 1 at 5, 19–22, fails for the reasons explained previously. Second, Reed's argument that his supervised-release revocation subjects him to double jeopardy, *see* civ. doc. 1 at 6, 23–24, lacks merit. The Double Jeopardy Clause, among other things, "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). But a supervised-release revocation is not a new punishment, as "postrevocation

16

sanctions [are] part of the penalty for the initial offense." *Johnson v. United States*, 529 U.S. 694, 700 (2000).  And the Court's modifying or extending Reed's punishment does not violate double jeopardy, because "[t]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be." *United States v. DiFrancesco*, 449 U.S. 117, 137 (1980).

Further, Reed's post-revocation sentence fell within the statutory maximums authorized by law.  When Reed initially pleaded guilty to Count 19, 42 U.S.C. § 408(a) authorized the Court to sentence Reed to up to five years' imprisonment, and 18 U.S.C. § 3583(b)(2) allowed the Court to impose up to three years of supervised release.  Section 3583 also authorized the Court, upon Reed's violating the terms of his supervised release, to impose a post-revocation sentence of up to two years' imprisonment and three years of supervised release (less any term of imprisonment imposed).  *See* 18 U.S.C. § 3583(e)(3), (b)(2), (h); *United States v. Morin*, 95 F.4th 592, 594–95 (8th Cir. 2024).  Thus, the Court's post-revocation sentence of 12 months and one day of imprisonment and 23 months of supervised release complied with section 3583.  *See* crim. doc. 296.

And Reed's argument that his supervised-release term violates the Supreme Court's decision in *United States v. Haymond*, 588 U.S. 634 (2019), fails.  The Eighth Circuit has held that the *Haymond* decision, "which held 18 U.S.C. § 3583(k) unconstitutional as applied to the defendant there," does not apply to all cases under section 3583.  *United States v. Childs*, 17 F.4th 790, 792 (8th Cir. 2021).  Specifically, it has held that revocation sentences under section 3583(e)(3) do not run afoul of *Haymond*'s holding.  *See United States v. Farmer*, 172 F.4th 621, 624–25 (8th Cir. 2026).  This is because the application of 3583(e)(3) does not:  (1) "depend on [the defendant's] commission of a discrete set of federal criminal offenses," (2) "eliminate the

17

judge's discretion in deciding whether [the defendant's] violations should result in imprisonment and for how long," and (3) "limit the judge's discretion in the same manner as § 3583(k)." *Id.* Thus, a revocation sentence under section 3583(e)(3) is "part of the penalty for the initial offense" and does not violate Reed's Fifth Amendment rights. *Id.* (citation omitted).

Third, Reed's argument that supervised release is unconstitutional, *see* civ. doc. 1 at 8, 25–28, would fail on appeal as an improper collateral attack on his underlying conviction and sentence. *See United States v. Miller*, 557 F.3d 910, 913 (8th Cir. 2009) ("A defendant may challenge the validity of his underlying conviction and sentence through a direct appeal or habeas corpus proceeding, not through a collateral attack in a supervised-release revocation proceeding."); *United States v. Simpson*, 704 F. App'x 609, 609 (8th Cir. 2017); *United States v. Simpson*, 932 F.3d 1154, 1156 (8th Cir. 2019) (adopting prior holding). Reed therefore fails to show that counsel's failure to appeal and raise this argument "worked to his actual and substantial disadvantage." *Reid*, 976 F.2d at 448. In sum, the Court finds that Reed fails to establish prejudice resulting from counsel's failure to appeal. Thus, his claims are procedurally defaulted and do not establish a right to relief under section 2255. *See Roundtree*, 885 F.3d at 1097.

The Court separately notes that Reed filed a notice of supplemental authority regarding the Supreme Court's decision in *Esteras v. United States*, 606 U.S. 185 (2025). *See* doc. 5. *Esteras* held that 18 U.S.C. § 3583(d)(1) prohibits a court from considering the factors under 18 U.S.C. § 3553(a)(2)(A) (i.e., "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") when deciding whether to revoke a term of supervised release. *Esteras*, 606 U.S. at 188, 204. Reed argues that *Esteras* bolsters his case, because "both the revocation and reimposition of release in

18

this case seem to have been based on retribution." Doc. 5 at 1.  But the Court clarified at Reed's revocation hearing that it considered only the factors under section 3553(a) that section 3583(d)(1) permits it to consider.  *See* crim. doc. 309, Rev. Hr'g Tr. at 11:10–11:15.  Thus, Reed's argument fails.

## IV.    Certificate of appealability

For the Court to issue a certificate of appealability, Reed must make a substantial showing that he suffered the denial of a constitutional right.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).  A substantial showing means one indicating that reasonable jurists could debate the issues, a court could resolve the issues differently, or the issues deserve further proceedings.  *Id.*  But as shown in the discussion above, Reed has not made such a showing.  Accordingly, the Court declines to issue a certificate of appealability in this case.

## V.    Conclusion

The Court finds that the record conclusively establishes that section 2255 does not entitle Reed to relief or an evidentiary hearing.  Accordingly, the Court denies Reed's [1] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  A separate judgment accompanies this Memorandum and Order.

So ordered this 30th day of June 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

19